PEARSON, MJ.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAMELA EIKLEBERRY, | ) | CASE NO. 5:09CV2286 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE KATHLEEN O'MALLEY |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| MICHAEL J. ASTRUE, | ) | BENITA Y. PEARSON |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |

Plaintiff Pamela Eikleberry ("Eikleberry") seeks judicial review of the Social Security Administration's ("Agency" or "Commissioner") final decision denying her application for Disability Insurance Benefits pursuant to 42 U.S.C. § 405(g).

After reviewing the administrative record and the applicable legal standards, the Court finds that the Administrative Law Judge's ("ALJ") decision, as written, is not based upon proper legal standards or supported by substantial evidence.  Accordingly, the undersigned recommends reversing and remanding the matter, pursuant to Sentence Four of 42 U.S.C. § 405(g), to permit the Agency to fully articulate the reasons for its decision and for further consideration of Eikleberry's claims in a manner consistent with this opinion.

(5:09CV2286)

## I. Overview

Eikleberry, a former clerk, administrative assistant and supervisor of accounts receivables, alleged disability due to physical and mental impairments resulting from heart disease, diabetes, and carpal tunnel, including depression and lack of energy; along with lack of control in her right hand, and weakness in her legs. (Tr. 100.) At fifty-three years old, Eikleberry, a high school graduate, qualified as a "person of advanced age" on her alleged disability onset date.[1] Although the ALJ found that Eikleberry had several physical severe impairments, he determined that her alleged mental impairments were not severe. (Tr. 12.) Ultimately, the ALJ determined Eikleberry "has not been under a disability, as defined in the Social Security Act" because she: (1) "did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments;" (2) could perform sedentary work with a sit/stand option, "the frequency and duration of which was at her discretion;" and (3) could perform past relevant work as an administrative assistant. (Tr. 18, 19.)

## II. Procedural History

Eikleberry filed an application for Disability Insurance Benefits on August 9, 2006, with an alleged disability onset date of July 7, 2006. (Tr. 10, 30.) The Agency denied Eikleberry's claim initially and upon reconsideration. On May 27, 2007, Eikleberry requested an administrative hearing. The administrative hearing was on December 8, 2008, with Eikleberry, her counsel, and a vocational expert present.[2] After the ALJ denied her benefits, Eikleberry

---

[1] *See* 20 C.F.R. § 404.1563(c).

[2] The ALJ held a video hearing pursuant to 20 C.F.R. 404.936(c).

(5:09CV2286)

requested administrative review of the hearing decision.  The Appeals Council denied Eikleberry's request for review, making the ALJ's decision on January 30, 2009, the Agency's final decision.  Seeking judicial review of the Agency's final decision, Eikleberry timely filed a Complaint presenting the following issue and sub-issues:

> (1) Whether the ALJ's finding that Plaintiff can perform her past relevant, highly skilled work is supported by substantial evidence.
>
>> (a) Whether the ALJ erred in finding that Plaintiff retained a residual functional capacity with no mental limitations;
>>
>> (b) Whether the ALJ erred in weighing medical opinions;
>>
>> (c) Whether the ALJ erred in concluding that a limitation in the ability to perform simple, routine tasks nonetheless would allow for the ability to perform highly skilled work.

ECF No. 12 at 6, 7, & 10.

### III.  Judicial Review of a Final Agency Decision

Judicial review of the ALJ's decision denying disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards.  *Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971).  Under 42 U.S.C. § 405(g), the findings of the ALJ are conclusive if they are supported by substantial evidence.  "Substantial evidence" is "more than a scintilla of evidence, but less than preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

(5:09CV2286)

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535, 536 (6th Cir. 1981); *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528. 535 (6th Cir. 2001). The ALJ's decision must be affirmed if it is supported by substantial evidence even if the reviewing court would have decided the matter differently, and even if substantial evidence also supports a different conclusion. See *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). "Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

The substantial evidence standard presupposes that there is a "zone of choice" within which the Agency may proceed without interference from the courts. *Mullen*, 800 F.2d at 545 (6th Cir. 1986). The district court may look into any evidence in the record, regardless of whether it has been cited by the ALJ. *Id*. The reviewing court, however, may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. See *Brainard*, 889 F.2d at 681; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**IV. Standard for Establishing Disability**

To establish disability under the Act, a claimant must show that he is unable to engage in substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for

(5:09CV2286)

a continuous period of not less than twelve months." See 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A). The claimant's impairment must prevent him from doing his previous work, as well as any other work existing in significant numbers in the national economy. See 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, Agency regulations prescribe a five-step sequential evaluation. If a claimant can be found disabled or not disabled at any step of the sequential evaluation, the review ends. 20 C.F.R. § 404.1520(a). At Step One, the ALJ considers the claimant's work activity. A claimant is not disabled if engaged in substantial gainful activity, *i.e.*, working for profit. At Step Two, the ALJ considers the medical severity of the claimant's impairments. A claimant is not disabled if she does not have a severe medically determinable physical or mental impairment that also meets the duration requirement in 20 C.F.R. § 404.1509, or a combination of impairments that are severe and meet the duration requirement. At Step Three, the ALJ determines whether the claimant's impairment meets or equals one of the criteria of an impairment listed in Appendix 1 and meets the duration requirement. See 20 C.F.R. § Part 404, Subpart P, Appendix 1. A claimant is disabled if she has an impairment that meets the listing and the duration requirement.

Before considering the fourth step, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), *i.e.*, the claimant's ability to perform physical and mental work on a sustained basis despite limitations from impairments. At Step Four, the ALJ considers whether the claimant's RFC permits her to perform past relevant work.

(5:09CV2286)

At the final step, Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant may work. Even if the claimant's impairment does prevent her from doing her past relevant work, the claimant is not disabled if other work exists in the national economy that she can perform. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (describing five-step evaluation).

The claimant bears the burden of proof at Steps One through Four. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984) ("A social security disability claimant bears the ultimate burden of proof on the issue of disability."). This means that the claimant bears the ultimate burden of proof regarding the issues of disability and the establishment of a disability onset date. *See* 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"); *McClanahan v. Comm'r of Soc. Security*, 474 F.3d 830, 836 (6th Cir. 2006).

At Step Five of the sequential evaluation, the burden shifts to the Commissioner to identify "a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also* 20 C.F.R. § 404.1512(a); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("[T]he Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy.").

(5:09CV2286)

## V. Analysis

Eikleberry's initial application for benefits alleged both physical and mental impairments. Her request for judicial review, however, does not challenge the ALJ's determination of her ineligibility for benefits due to her physical impairments. The Court will therefore only address Eikleberry's claims of mental impairments. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) (the Court's consideration is appropriately limited to the particular points raised by plaintiff in her brief on appeal). Overall, Eikleberry argues that the ALJ's finding that she can perform her past relevant work as a skilled administrative assistant is not supported by substantial evidence due to the ALJ's failure to properly evaluate medical evidence relative to her mental health. ECF No. 12 at 6.

**A. The ALJ's Residual Functional Capacity Determination is Flawed**

**1. Legal Standard**

After Step Three and before determining whether the claimant can perform her past work at Step Four of the Agency's sequential evaluation, the ALJ is required to assess a claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e) The RFC finding is an administrative assessment of "what an individual can still do despite his or her limitations." *See* 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 61 Fed. Reg. 34474, 34475 (1996). The ALJ's determination of a claimant's RFC is a legal decision rather than a medical one. *See* 20 C.F.R. § 404.1527(e); SSR 96-5p, 61 Fed. Reg. 34471, 34474 (1996). As such, the final responsibility for deciding issues such as RFC is reserved to the Commissioner. 20 C.F.R. § 404.1546.

(5:09CV2286)

When determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the case record, 20 C.F.R. 404.1545(a)(1), including both a claimant's severe and non-severe impairments. 20 C.F.R. 404.1545(a)(2). Particularly, when assessing a claimant's mental capacity, an ALJ must evaluate the severity of a claimant's mental limitations and will decide how those limitations affect the claimant's capacity to work. 20 C.F.R. 404.1545(c) ("When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis."). Limitations in mental health may reduce one's capacity to perform certain types of work. 20 C.F.R. 404.1545(c).

**2. The Standard as Applied to the ALJ's RFC Determination**

When an error, such as an ALJ's failure to properly evaluate objective medical evidence occurs in the sequential analysis before the ALJ has made a residual functional capacity determination, the residual functional capacity determination must be redone. Whether substantial evidence supports the ALJ's decision is beside the point. "[T]o recognize substantial evidence as a defense to non-compliance with § 1527(d)(2)[ ] would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004).

Contrary to Agency regulations, the ALJ failed to identify and give appropriate consideration to the medical opinion of Eikelberry's primary care physician, Dr. Fast, D.O., and

(5:09CV2286)

the Court declines to classify the ALJ's omission as a harmless error.[3] This error, alone, dictates reversal and remand as it is contrary to the Agency's self-imposed treating physician rule.[4] Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *4 ("Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 . . . .").

In assessing the medical evidence provided in support of a claim for disability benefits, there are certain governing standards or rules that an ALJ must follow. Among these is the treating physician rule which requires the ALJ to give a treating source opinion "controlling weight" if the treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."[5] 20 C.F.R. § 404.1527(d)(2). An ALJ's decision to grant a treating physician's medical opinion less than controlling weight must be accompanied by "good reasons" that are both: (1) supported by the evidence in the case record, and (2) sufficiently

---

[3] Eikleberry's counsel describes Dr. Fast as her "primary care physician." ECF No. 16 at 2. Semantics is not a barrier to an appropriate analysis. See Show v. Comm'r of Soc. Sec., 2009 WL 804815 at *2 (E.D. Mich. 2009) ("[T]he ALJ did not even identify Dr. DeFranco as a treating physician. Therefore, the Court cannot conclude with any certainty that the ALJ reviewed his opinions, and the Court declines to characterize this omission as harmless error.").

[4] The Commissioner's *post facto* argument that Dr. Fast is "not a mental health professional and did not provide a mental health diagnosis" is objectionable given that Dr. Fast is a doctor of osteopathic medicine and, as such, is permitted to diagnose and treat mental as well as physical conditions. 20 CFR § 404.1513(a)(1). This issue is, however, dwarfed by the ALJ's failure to recognize and assign weight to Dr. Fast's opinion.

[5] A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. There appears to be no dispute that Dr. Fast treated Eikleberry from August 16, 2006 to at least April 25, 2007. ECF No. 12 at 2.

(5:09CV2286)

specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR. 96-2p. The ALJ's failure to follow the procedural requirement "of identifying the reasons for discounting the opinion and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 243 (6th Cir. 2007).

In the instant case, the ALJ neither articulated the nature and extent of Dr. Fast's treating relationship with Eikleberry or recognized her written medical opinion. The record corroborates that the ALJ does not mention Dr. Fast and, indeed, appeared not to know that Dr. Fast authored a report cited by the ALJ but given no significant weight. (Tr. 12-19.) It is problematic that the ALJ cites to Exhibit 8F and explains that the "identity of the author of these notes is unknown."[6] (Tr. 14 at n.14.) While the ALJ articulates that the "unknown" author opines that Eikleberry's "ability to concentrate was impaired by her mood, and that she got easily agitated by others" he fails to give the opinion the weight it may deserve because he does not recognize it as that of a physician who may qualify as a treating physician and as one qualified to make mental health determinations. (Tr. 14 n.16, 304). Eikleberry's identification of Exhibit 8F as Dr. Fast's

---

[6] The ALJ's error is partly explained because the five pages of Exhibit 8F are not in the appropriate sequential order. (Tr. 303-307.) The last page of Exhibit 8F bears the signature of Dr. Fast. (Tr. 307.) The first two pages (which appear to have been reviewed by the ALJ) reveal Dr. Fast's findings as of October 18, 2006. While the lack of order is unfortunate, with minimal diligence, the ALJ should have been able to identify the author as claimant's primary care physician.

-10-

(5:09CV2286)

reported medical determination is supported by a close review of the transcript.[7] ECF No. 12 at 2.

The ALJ's failure to acknowledge the opinion of Dr. Fast is contrary the Agency's treating physician rule.[8] As important, this error leaves the undersigned unable to engage in a meaningful review because the ALJ's decision is not sufficiently specific to make clear that the ALJ realized the nature and extent of Dr. Fast's treating relationship with Eikelberry and, as a result, formulated an accurate and comprehensive RFC.[9] *See Fisk*, 253 Fed.Appx. 580 at 586 (remand required when ALJ insufficiently accounted for medical opinion of claimant's treating physician).

Based upon the flaw described above, the residual functional capacity must be redone in order to reflect the ALJ's consideration as to the nature and extent of Dr. Fast's findings. Therefore, a reversal and remand is necessary.

## VII. Conclusion

For the above reasons, the Court recommends reversing the Agency's final decision denying Plaintiff Pamela Eikleberry benefits and remanding the matter, pursuant to the Fourth Sentence of 42 U.S.C. § 405(g), for further consideration of medical opinion evidence regarding

---

[7] Eikleberry avers that, "[i]n a report to the State disability determination services office on October 18, 2006, Dr. Fast noted anxiety and agitation. (Tr. 303.) Dr. Fast reported Plaintiff's 'ability to concentrate is impaired d/t mood–&gets agitated by others . . . .' (Tr. 304.)"

[8] That the claimant bears the burden of proving her disability does not absolve the ALJ of the responsibility for properly evaluating the medical evidence presented.

[9] The undersigned finds it unnecessary to address other errors alleged by Eikleberry as the failure to properly evaluate the opinion of a putative treating physician dictates remand.

(5:09CV2286)

Pamela Eikleberry in a manner consistent with this opinion.

Specifically, the undersigned recommends instructing, upon remand, that the ALJ is ordered to re-evaluate the medical evidence, including that submitted by Debra Fast, D.O., and Pamela Eikleberry's severe and non-severe mental and physical impairments, before formulating a residual functional capacity in accordance with the appropriate Agency Rules and Sixth Circuit law.

IT IS SO ORDERED.

| December 2, 2010 | /s/ Benita Y. Pearson |
|---|---|
| Date | United States Magistrate Judge |

**OBJECTIONS**

Objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).